UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

ARTISAN MANUFACTURING CORPORATION,  :

                 Plaintiff,  :

         - against -  :

ALL GRANITE & MARBLE CORPORATION.,  :

          Defendant.  :

------------------------------------------------------------ x

Civil Action No.:
07 cv 11278 (WHP)


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER
AND ORDER OF EXPEDITED DISCOVERY**


ARNOLD & PORTER LLP
Louis S. Ederer
John Maltbie
Eleanor Lackman
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff Artisan Manufacturing Corporation*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ..................................................................................................... 7

I.     ARTISAN IS ENTITLED TO A PRELIMINARY
INJUNCTION ......................................................................................... 7

     A.    Standard For Preliminary Injunctive Relief ........................................... 7

     B.    Artisan is Likely to Succeed on the Merits of Its Claims
for False Advertising ............................................................................ 8

     C.    Artisan is Likely to Succeed on the Merits of Its Claims
for Trademark Infringement and False Designation of
Origin ................................................................................................. 11

          1.    Artisan's Trademarks Are Valid and Entitled to
Protection Under the Lanham Act ........................................... 11

          2.    There is a Likelihood of Confusion Between
the ARTISAN Trademarks and All Granite's
Use of the Artisan Name and the Infringing
Fleur-de-Lis Design Mark ....................................................... 13

               a.    The Strength of the ARTISAN
Trademarks Favors a Finding of a
Likelihood of Confusion ............................................... 14

               b.    The Similarity Between the Marks at
Issue Favors a Finding of a Likelihood
of Confusion ................................................................. 16

               c.    The Parties' Goods Are In Close
Competitive Proximity of One Another
and There Is No Gap To Bridge .................................... 17

               d.    There Is Already Evidence of Actual
Confusion ..................................................................... 18

               e.    All Granite Has Acted in Bad Faith ............................... 19

               f.    All Granite's Infringing Substitute
Sinks Are of Inferior Quality ........................................ 20

               g.    Even Sophisticated Consumers Will Be
Deceived by All Granite's Conduct ............................... 21

3.  Artisan Has Demonstrated a Clean Sweep of
the *Polaroid* Factors ................................................................ 22

D.  Artisan Will Continue to Suffer Irreparable Harm Unless
Preliminary Relief is Granted ............................................... 22

E.  In the Alternative, Artisan Has At Least Raised Serious
Questions On the Merits and the Balance of Hardships
Tips Decidedly in Its Favor .................................................... 23

II.  ARTISAN IS ENTITLED TO A TEMPORARY
RESTRAINING ORDER ............................................................... 24

III.  ARTISAN IS ENTITLED TO AN ORDER OF EXPEDITED
DISCOVERY ................................................................................. 25

CONCLUSION ................................................................................................ 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advanced Portfolio Tech., Inc. v. Advanced Portfolio Tech., Ltd.*, 1994
WL 719696 (S.D.N.Y. Dec. 28, 1994) ...................................................................25

*Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384 (2d Cir.1995)........................... 20

*Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F.
Supp. 896 (S.D.N.Y. 1995)...............................................................................16

*Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 250 (S.D.N.Y. 1999), *aff'd*,
216 F.3d 1071 (2d Cir. 2000)..........................................................................7, 8

*Behnam Jewelry Corp. v. Aron Basha Corp.*, 1997 WL 639037 (S.D.N.Y.
Oct. 14, 1997) ..................................................................................................25

*Bristol-Myers Squibb Co. v. McNeil-P.P.C. Inc.*, 973 F.2d 1033 (2d Cir.
1992) .................................................................................................................21

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568 (2d Cir.
1981) .................................................................................................................23

*Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57 (2d Cir. 1992) .................................8, 10

*Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217 (2d Cir.
1987) ...........................................................................................................18, 19

*Clinique Labs. Inc. v. Dep Corp.*, 945 F. Supp. 547 (S.D.N.Y. 1996) .............................17

*Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312 (2d Cir. 1982) ...........................9

*Conopco, Inc., v. Cosmair, Inc.*, 49 F. Supp. 2d 242 (S.D.N.Y. 1999) ............................18

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d
200 (2d Cir. 1979)..............................................................................................14

*Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547 (S.D.N.Y.
1987) .................................................................................................................15

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277
(S.D.N.Y. 2000)................................................................................................20

*Francis S. Denney, Inc. v. I.S. Lab, Inc.*, 737 F. Supp. 247 (S.D.N.Y. 1990) ................................................................................................25

*Genesee Brewing Co. v. Stroh Brewing Co.*, 12 F.3d 137 (2d Cir. 1997) ...........................8

*Glaxo Warner-Lambert OTC G.P. v. Johnson & Johnson Merck Consumer Pharm. Co.*, 935 F. Supp. 327 (S.D.N.Y. 1996) ...................................................8, 9, 10

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974) ............................................................................24

*Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993) ................................................................................................16

*GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273 (S.D.N.Y. 2002) .....................18

*Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988) ........................................18

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir. 1988) .................................8, 17

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953) .........................23

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000) ................................................................................................22

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294 (2d Cir. 1992) ....................................................................9

*Kookai, S.A. v. Shabo*, 950 F. Supp. 605 (S.D.N.Y. 1997) .................................................17

*Lang v. Retirement Living Pub. Co.*, 949 F.2d 576 (2d Cir. 1991) ....................................19

*Lawn Tennis Assoc. v. British Tennis Agency*, 1 U.S.P.Q.2d 1283 (S.D.N.Y. 1986) ............................................................................................18

*Lexington Mgt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271 (S.D.N.Y. 1998) ..............................................................................11, 12, 15, 16

*Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986) ..............................................................................12, 13, 15, 18

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544 (2d Cir. 1991) ................................................................................................9

*Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576 (2d Cir. 2005) ................................................................................................13

*New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183 (2d Cir. 2001).......................13

*New York State Soc'y of Certified Public Accountants v. Eric Louis Assoc., Inc.*, 79 F. Supp. 2d 331 (S.D.N.Y. 1999) ................................................19

*Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91 (2d Cir. 1993).........................................17

*OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176 (W.D.N.Y. 2000) ................................................................................................7, 8, 19

*Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577 (2d Cir. 1993) ................................................................................................15

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. 1981).....................19

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952 (E.D.N.Y. Mar. 26, 2004)................................................................................13

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ..................... *passim*

*Power Test Petroleum Distribs. v. Calcu Gas*, 754 F.2d 91 (2d Cir. 1985) .....................22

*Recycled Paper Prods., Inc. v. Pat Fashions Indus., Inc.*, 731 F. Supp. 624 (S.D.N.Y. 1990) ................................................................................25

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134 (2d Cir. 1991)................................................................20

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway*, 858 F. Supp. 1268 (S.D.N.Y. 1994)........................................................25

*Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) ........................................12, 18

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001) ........................8, 10

*Schering Corp. v. Pfizer Inc.*, 189 F.3d 218 (2d Cir. 1999)................................................9

*Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977) ................................................................................................13

*Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996) ................................................................................................16

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 2004 WL 2158120
(S.D.N.Y. Sept. 28, 2004) .............................................................................13

*In re Swift & Co.*, 223 F.2d 950 (C.C.P.A. 1955) ...............................................13

*Time, Inc. v. Peterson Publ'g Co.*, 173 F.3d 113 (2d Cir. 1999) .......................11

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007).........9

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp.
473 (S.D.N.Y. 1990) ....................................................................................25

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) .............................13

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ..............................11

*Woods v. Universal City Studios, Inc.*, 920 F. Supp. 62 (S.D.N.Y. 1996).........7

*W.W.W. Pharm. Co. Inc. v. The Gillette Co.*, 984 F.2d 567 (2d Cir. 1993).........15, 21

## STATUTES AND FEDERAL RULES OF CIVIL PROCEDURE

15 U.S.C. § 1057(b) ............................................................................................12

15 U.S.C. § 1114(a) ...................................................................................... *passim*

15 U.S.C. § 1125(a) ...................................................................................... *passim*

Fed. R. Civ. P. 34 (b) .........................................................................................25

Fed. R. Civ. P. 65 ..............................................................................................24

Plaintiff Artisan Manufacturing Corporation ("Artisan") respectfully submits this memorandum of law, together with the accompanying declarations of Alex Han, Founder and Marketing Director of Artisan ("Han Decl."), Joseph Amabile, Regional Sales Manager of Artisan ("Amabile Decl."), Allison Davies, an investigator with Abacus Security ("Davies Decl."), Celia Muller, a paralegal with Arnold & Porter LLP ("Muller Decl."), and Louis Ederer, a partner with Arnold & Porter LLP and counsel to Artisan ("Ederer Decl."), in support of its motion for a preliminary injunction, temporary restraining order and order for expedited discovery against defendant All Granite & Marble Corporation ("All Granite"), arising out of the false advertising, trademark infringement and other unlawful activity of All Granite concerning its countertop installation services.

## PRELIMINARY STATEMENT

On December 14, 2007, following an investigation into the conduct of All Granite that confirmed reports from various All Granite customers that All Granite was promoting the installation of genuine ARTISAN brand sinks in conjunction with its countertop installation services, but was, instead, installing inferior sinks of unknown origin, Artisan put All Granite on notice that All Granite was infringing Artisan's trademarks and engaging in deceptive trade practices. Artisan demanded that All Granite, *inter alia*, immediately: (i) cease and desist from all further use of the ARTISAN Trademarks (as defined herein); (ii) remove all genuine ARTISAN brand sinks and any ARTISAN promotional materials from its showrooms; and (iii) cease and desist from any further manufacturing, importation, advertising, offering for sale, sale or distribution of any products bearing marks confusingly similar to the ARTISAN Trademarks.

In response, All Granite denied that it was involved in any infringing or unlawful activity and specifically denied that an ARTISAN brand sink was on display in All Granite's showroom.

All Granite's response letter, which stated that the only period in which All Granite "ever commercially handled" ARTISAN brand sinks was for a four month period in early 2006, was in direct contradiction to the claims made by All Granite's salespeople to Artisan's investigators in November and December 2007, as well as to other customers of All Granite who have contacted Artisan to inquire about what they have mistakenly been led to believe are genuine ARTISAN brand sinks. Moreover, on January 2, 2008, Artisan confirmed that a genuine ARTISAN brand sink continued to be on display at All Granite's showroom, meaning that, in all likelihood, All Granite was continuing to misinform its customers that genuine ARTISAN brand sinks would be installed in conjunction with All Granite's countertop installation services and that All Granite was continuing to install inferior sinks bearing a design confusingly similar to Artisan's design mark in its customers' homes under the guise that such sinks are genuine ARTISAN brand sinks.

Based upon the evidence submitted in support of this application, there can be no doubt that All Granite has been engaged in a "bait and switch" scheme whereby it entices potential customers into contracting for its services by promising that it will install a high quality ARTISAN brand sink. Upon installation, however, All Granite substitutes sinks of inferior quality that bear a design mark that is confusingly similar to Artisan's FLEUR-DE-LIS design mark. As Artisan has no idea as to how long All Granite has been making such misrepresentations to its customers or how many All Granite customers have been misled by such misrepresentations, and as All Granite has given no indication that it intends to cease such conduct, Artisan has been compelled to make the instant application to prohibit All Granite from engaging in further unlawful activity and to protect both Artisan and the public from further harm.

## STATEMENT OF FACTS

Artisan manufactures, markets, and sells high quality, stainless steel sinks, faucets and accessories, which are comparable to other high-end brands such as Kohler, Blanco and Elkay. Han Decl. ¶ 2. Artisan was among the first sink manufacturers to begin using heavy 16 gauge stainless steel — which is 10-20% thicker than 18 gauge, almost 15-25% thicker than 20 gauge stainless steel and more resistant to stains and corrosion — for non-commercial home-use applications. *Id.* ¶ 3. In fact, ARTISAN brand sinks have the function and convenience of professional sinks, with extra deep bowls that can accommodate large pots and pans and plumbing components that are fully coated with rubber to deaden sound. *Id.* In addition, Artisan takes great care in the finish of its sinks, utilizing special sanding equipment to produce the type of finish used by high-end kitchen appliance manufacturers such as Bosch, KitchenAid and SubZero, which allows for a visually appealing and uniform overall look among a customer's kitchen appliances. *Id.* ¶ 4. Also adding to the visual appeal of Artisan's sinks is the fact that Artisan offers one of the tightest edge radiuses, which allows for use of less silicone and also allows the interior of the sink to be much larger. *Id.*

Since its founding in 2003, Artisan has developed a nationwide distribution network of approximately 800 authorized dealers and resellers. *Id.* ¶ 5. Becoming an authorized dealer or reseller of ARTISAN brand sinks is not simple, however. Rather, Artisan carefully examines each entity that seeks to distribute ARTISAN brand product to ensure that the entity has a good reputation for quality and service and to determine whether the prospective dealer provides a high-quality sales environment; offers high quality granite and other products of the same caliber as ARTISAN brand sinks; has a substantial and well-trained sales force that can deliver a sales pitch that best reflects the image and quality of ARTISAN brand sinks; maintains sufficient

3

credit-worthiness to satisfy Artisan; and cares about its customers and potentially those who

would buy an ARTISAN brand sink. *Id.* ¶ 6.

      In addition, Artisan has adopted and uses two trademarks that are critical to its business.

The first, the ARTISAN brand name, has been registered with the U.S. Patent and Trademark

Office, for use in connection with sinks and other related products in Class 11, as U.S.

Trademark Reg. No. 2,964,024, and is also the subject of a pending application for use in

connection with bottom grids and draining baskets for use with kitchen sinks in Class 21 (U.S.

App. Ser. No. 77/314,100). *Id.* ¶¶ 7-8. The second is the following FLEUR-DE-LIS design

mark that appears on all ARTISAN brand products:



Artisan's FLEUR-DE-LIS design mark is the subject of pending applications for use with sinks

in Class 11 (U.S. App. Ser. No. 77/316,683); bottom grids and draining baskets in Class 21 (U.S.

App. Ser. No. 78/979,572); and kitchen and bath accessories in Class 21 (U.S. App. Ser. No.

78/363,897) (intent to use application). *Id.* (The ARTISAN mark and the FLEUR-DE-LIS

design mark shall hereinafter be referred to as the ARTISAN Trademarks).

      Artisan has expended substantial time, money and other resources in developing,

advertising and promoting kitchen fixtures and sinks bearing the ARTISAN Trademarks to

consumers. Advertisements for ARTISAN brand sinks, featuring the FLEUR-DE-LIS design

mark, have appeared in publications including *Better Homes & Gardens*, *Trends*, *Signature*

*Kitchens*, *Food & Wine*, *Bath & Kitchen PRO*, *Kitchen & Bath Business* and *Stone World*. *Id.* ¶

9, Ex. D. As a result of these efforts, Artisan has enjoyed significant commercial success and

consumers have come to readily identify sinks sold under and bearing the ARTISAN Trademarks as being of the highest quality and as emanating from and being sponsored and approved by Artisan. *Id.* ¶ 10. The goodwill symbolized by the ARTISAN Trademarks is of incalculable value. *Id.*

All Granite had become an authorized dealer of ARTISAN brand sinks in November 2004. By August 2006, however, Artisan ended the relationship because All Granite fell short of the standards Artisan requires of its dealers, and seemed to be intent on offering its customers lower cost, inferior products. *Id.* ¶¶ 11-13. As a result, Artisan has not sold any ARTISAN brand products to All Granite since August 2006. *Id.* In late October 2007, however, Artisan learned from All Granite customers that All Granite was still displaying an ARTISAN brand sink bearing Artisan's FLEUR-DE-LIS design mark in its retail showroom, and was purporting to install ARTISAN brand sinks along with its kitchen countertops and countertop installation services. *Id.* ¶ 14.

Specifically, customers of All Granite began contacting Artisan to purchase accessories for the sinks being installed by All Granite, and to report problems with the sinks. These customers told Artisan that, at the point of sale, All Granite's salesperson showed them a model installation with an ARTISAN brand sink, bearing the FLEUR-DE-LIS design mark, and represented that the ARTISAN brand sink shown would be part of the installation performed by All Granite. When these customers contracted with All Granite and ordered countertop installations, however, the countertop was installed in their homes with a sink that was not an authentic ARTISAN brand product. Instead, a substitute sink, which bears a fleur-de-lis design that is similar to Artisan's FLEUR-DE-LIS design mark, was installed. Notably, at no point in time did All Granite inform these customers that the sink All Granite actually installed was not

an ARTISAN brand sink. *Id.*, Ex. E.

Upon receiving the reports from All Granite customers that All Granite was purporting to offer and install ARTISAN brand sinks in conjunction with its countertop installation services, Artisan determined to confirm these reports for itself. Accordingly, in November and December 2007, Artisan hired Abacus Security to conduct an investigation to determine whether All Granite was falsely informing consumers that it would install ARTISAN brand sinks as part of its countertop installation services. *Id.* ¶ 15.

The investigation of All Granite confirmed that (i) All Granite displays an ARTISAN brand sink in its showroom; (ii) All Granite's salespeople specifically refer to Artisan, and in particular, mention that Artisan manufactures 16 gauge stainless steel sinks, during their sales pitches; (iii) All Granite's salespeople inform consumers that they can choose to have an ARTISAN brand sink installed in connection with All Granite's countertop installation services; and (iv) All Granite's salespeople confirm to consumers that an ARTISAN brand sink will be installed in their homes. Davies Decl. ¶¶ 1-10. Moreover, the investigation, which culminated in an actual countertop installation by All Granite in the home of Artisan's Regional Sales Manager, Joseph Amabile, further confirmed that (i) upon installation, All Granite does not install an ARTISAN brand sink, but rather a sink of inferior quality bearing a confusingly similar fleur-de-lis design; and (ii) All Granite never informs consumers that the sink that it has installed is not an ARTISAN brand sink. Amabile Decl. ¶¶ 1-8.

As noted above, on December 14, 2007, Artisan put All Granite on notice of its unlawful and deceptive activity and demanded that All Granite take immediate steps to remedy the harm caused to Artisan. Ederer Decl. ¶ 3, Ex. A. In response, however, All Granite denied any wrongdoing, and specifically denied that an ARTISAN brand sink was on display in All

6

Granite's showroom. *Id.* ¶ 4, Ex. B. All Granite's response letter conceded, however, that the only period in which it "ever commercially handled" ARTISAN brand sinks was for a four month period in early 2006. *Id.* A follow up visit to All Granite has confirmed, however, that an ARTISAN brand sink remains on display in the All Granite showroom. Muller Decl. ¶¶ 1-4, Ex. A.

In view of the foregoing, as discussed in detail below, All Granite has given no indication that it intends to stop misleading consumers into believing that they are receiving ARTISAN brand sinks in conjunction with All Granite's countertop installation services. Accordingly, there is a need for early injunctive relief to prohibit All Granite from falsely promoting its services and from continuing to infringe the valuable ARTISAN trademarks.

## ARGUMENT

## I.    ARTISAN IS ENTITLED TO A PRELIMINARY INJUNCTION

In view of the facts set forth above, and as detailed in the accompanying declarations of Alex Han, Joseph Amabile, Allison Davies, Celia Muller and Louis Ederer, and the exhibits attached thereto, Artisan has clearly met the prerequisites for preliminary injunctive relief in this Circuit.

### A.    Standard For Preliminary Injunctive Relief

In cases involving claims of trademark infringement, false designation of origin and false advertising under the Lanham Act, as in other types of cases, "[a] party seeking a preliminary injunction must demonstrate that it (1) is threatened with irreparable injury absent an injunction and (2) either (a) is likely to prevail on the merits or (b) has raised serious questions going to the merits and the balance of hardships tips decidedly in its favor." *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 250 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1071 (2d Cir. 2000). *See OBH, Inc. v.*

7

*Spotlight Magazine, Inc.,* 86 F. Supp. 2d 176, 184 (W.D.N.Y. 2000); *Woods v. Universal City Studios, Inc.,* 920 F. Supp. 62, 64 (S.D.N.Y. 1996).

In the false advertising context, "irreparable harm is presumed when the plaintiff can demonstrate a likelihood of success in showing defendant's advertisement was literally false." *Glaxo Warner-Lambert OTC G.P. v. Johnson & Johnson Merck Consumer Pharm. Co.,* 935 F. Supp. 327, 328 (S.D.N.Y. 1996), *citing Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57 (2d Cir. 1992). In addition to proving falsity, the plaintiff must show that the representation was "material," that is, that it concerned an inherent quality or characteristic of the product. *See, e.g., S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 238 (2d Cir. 2001).

Similarly, "[i]n the trademark context, irreparable harm ordinarily is presumed if a plaintiff demonstrates a likelihood of consumer confusion. Hence, no separate analysis of this issue is necessary." *Bear U.S.A.,* 71 F. Supp. 2d at 250. *See Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir. 1988) ("a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm"); *OBH, Inc.,* 86 F. Supp. 2d at 184-85. Thus, if a likelihood of confusion is established, then the injury that necessarily follows therefrom is irreparable; the dual inquiry therefore potentially merges into a single question. "In the context of trademark . . . injunctions, the requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion establishes irreparable harm." *Genesee Brewing Co. v. Stroh Brewing Co.,* 12 F.3d 137, 142 (2d Cir. 1997); *see also Hasbro, Inc.,* 858 F.2d at 73.

### B.    Artisan is Likely to Succeed on the Merits of Its Claims for False Advertising

In this action, Artisan seeks, *inter alia,* relief for infringement and counterfeiting of a registered trademark under § 32(a) of the Lanham Act, 15 U.S.C. § 1114, and false designation

of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  With respect to Artisan is

claim for false advertising under the Lanham Act, Section 43(a) of the Lanham Act provides, in

pertinent part that:

> Any person who, on or in connection with any goods or services . . . uses in
> commerce . . . any . . . false or misleading description of fact, or false or
> misleading representation of fact, which —
>
> . . . .
>
> (B)      in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be liable in a civil action by any
> person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

In order to recover damages or to obtain equitable relief under § 43(a)(1)(B), "a plaintiff

must demonstrate either (1) the challenged advertisement is literally false, or (2) while the

advertisement is literally true it is nevertheless likely to mislead or confuse consumers." *Glaxo

Warner-Lambert OTC G.P.*, 935 F. Supp. at 328, *citing Johnson & Johnson-Merck Consumer

Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992); *McNeil-P.C.C., Inc.

v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991).  Where a plaintiff can

demonstrate that the challenged advertisement is literally false, *i.e.*, false on its face, consumer

deception is presumed, and "the court may grant relief without reference to the advertisement's

[actual] impact on the buying public." *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312,

314-15 (2d Cir. 1982), *abrogated on other grounds by* Fed. R. Civ. P. 52(a).  "This is because

plaintiffs alleging a literal falsehood are claiming that a statement, on its face, conflicts with

reality, a claim that is best supported by comparing the statement itself with the reality it purports

to describe." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007),

quoting *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999).

Accordingly, in cases involving false advertising claims under § 43(a) of the Lanham Act, "irreparable harm is presumed when the plaintiff can demonstrate a likelihood of success in showing defendant's advertisement was literally false." *Glaxo Warner-Lambert OTC G.P.*, 935 F. Supp. at 328, *citing Castrol, Inc*, 977 F.2d at 57. In addition to proving falsity, the plaintiff must show that the representation was "material," that is, that it concerned an inherent quality or characteristic of the product. *See, e.g.*, *S.C. Johnson & Son, Inc.*, 241 F.3d at 238.

Here, there can be no question that All Granite's representations to consumers concerning its offer to install purported ARTISAN brand sinks are literally false. Indeed, All Granite is not presently an authorized dealer of ARTISAN brand sinks, and, as conceded by All Granite's attorney, All Granite only "ever commercially handled" ARTISAN brand sinks for a four month period in early 2006. Ederer Decl. ¶ 4, Ex. B. Thus, in view of the repeated specific and direct references to ARTISAN brand sinks made by All Granite's salespeople, All Granite has confirmed the literal falsity of the claims made by All Granite's salespeople to Artisan's investigators in November and December 2007, as well as to other presumably numerous customers of All Granite who have been mistakenly been led to believe are genuine ARTISAN brand sinks. Davies Decl. ¶¶ 1-10.

As for the issue of materiality, there can also be no question that the issue of the origin of the sinks that All Granite offers its customers and the quality of construction that goes into such sinks are material considerations for consumers. Indeed, during Artisan's investigation, an All Granite salesperson praised the qualities of the ARTISAN brand sink that All Granite would purportedly install, stating that the 16 gauge ARTISAN brand sinks ""were tougher and better" than other sinks on the market. *Id.* ¶ 5. Given that All Granite, itself, points to the Artisan name and quality of construction in attempting to convince consumers to utilize its countertop

installation services, it is clear that such factors are material to the consumer's decision.

**C.    Artisan is Likely to Succeed on the Merits of Its Claims for Trademark Infringement and False Designation of Origin**

In the alternative, Artisan is just as likely to succeed on the merits of its claims for

trademark infringement and false designation of origin under §§ 32 and 43(a) of the Lanham Act,

respectively.  Section 32 of the Lanham Act protects, among other things, against the

unauthorized use in commerce of:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in
> connection with the sale, offering for sale, distribution, or advertising of any
> goods on or in connection with which such use is likely to cause confusion, or to
> cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 43(a)(1)(A) of the Lanham Act protects both registered and unregistered marks

against the use of "any word, term, name, symbol, or device, or any combination thereof" which:

> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person."

15 U.S.C. § 1125(a)(1)(A).

Under either section, a plaintiff must demonstrate that (1) it has a valid mark that is

entitled to protection under the Lanham Act, and (2) use of the defendant's mark infringes, or is

likely to infringe, plaintiff's mark.  *See, e.g., Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d

Cir. 2003); *Time, Inc. v. Peterson Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999); *Lexington Mgt.

Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277 (S.D.N.Y. 1998).  Artisan can

satisfy both of these showings.

### 1.    Artisan's Trademarks Are Valid and Entitled to Protection Under the Lanham Act

There is no question of the validity of Artisan's trademarks.  Under Section 7(b) of the Lanham Act (15 U.S.C. § 1057(b)), a certificate of registration of a trade or service mark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate."  15 U.S.C. § 1057(b); *see also Savin Corp. v. Savin Group*, 391 F.3d 439, 457 (2d Cir. 2004) (registered trademarks should be "afforded utmost protection").

As noted above, Artisan is the owner of U.S. Trademark Reg. No. 2,964,024 for the mark ARTISAN, for use in connection with sinks and related products in Class 11, which was registered on June 28, 2005.  The registered ARTISAN mark is "presumed to be distinctive and should be afforded the utmost protection."  *Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *Lexington Mgt. Corp.*, 10 F. Supp. 2d at 277.

Moreover, Artisan's unregistered FLEUR-DE-LIS design mark, which is the subject of pending applications for use with sinks in Class 11 (U.S. App. Ser. No. 77/316,683); bottom grids and draining baskets in Class 21 (U.S. App. Ser. No. 78/979,572); and kitchen and bath accessories in Class 21 (U.S. App. Ser. No. 78/363,897) (intent to use application), is valid and protectable under the Lanham Act as well.  As a preliminary matter, the FLEUR-DE-LIS design mark has been used exclusively in commerce in connection with sinks by Artisan since August 2003.  Further, the FLEUR-DE-LIS design mark is a unique and fanciful design.  The Court of Customs and Patent Appeals has said that a design mark is inherently distinctive, and therefore

12

protectable and enforceable as a trademark without more, if it meets the following criteria: (1) it is not a common basic shape or design; (2) it is unique or unusual in its field; (3) it is not a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods; and (4) it is capable of creating a distinct commercial impression. *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977). *See also In re Swift & Co.*, 223 F.2d 950 (C.C.P.A. 1955). Here, Artisan's FLEUR-DE-LIS design mark satisfies all the criteria. Accordingly, Artisan's FLEUR-DE-LIS design mark is valid and protectable under § 43(a) of the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("it is common ground that § 43(a) protects qualifying unregistered trademarks").

### 2. There is a Likelihood of Confusion Between the ARTISAN Trademarks and All Granite's Use of the Artisan Name and the Infringing Fleur-de-Lis Design Mark

The question of infringement turns on whether there is a likelihood of confusion. In deciding whether a likelihood of consumer confusion exists, the Second Circuit applies an eight-factor test established by Judge Friendly in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961): (1) strength of the senior user's mark, (2) degree of similarity between the marks, (3) competitive proximity of the products, (4) likelihood that the senior user will bridge the gap, (5) evidence of actual confusion, (6) defendant's bad faith, (7) quality of defendant's product, and (8) sophistication of the relevant consumer group. *See also Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005); *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir. 2001).

The *Polaroid* eight-factor test is not a "rigid formula", *Lois Sportswear*, 799 F.2d at 872, in that "no one factor is determinative and the list [of relevant factors] is not exhaustive." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 2004 WL 2158120, at *4 (S.D.N.Y. Sept. 28,

2004), *quoting Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, at *3 (E.D.N.Y.

Mar. 26, 2004). Rather, the *Polaroid* factors are intended to act "as a useful guide" in

determining if there exists a likelihood of confusion. *Lois Sportswear*, 799 F.2d at 872.

Moreover, for purposes of establishing a likelihood of confusion under § 43(a)(1)(A) of

the Lanham Act, a party need not prove direct confusion, *i.e.*, that consumers believe the product

in question is the owner's product, but may show association confusion, namely that the

consumer believes the use in question is sponsored or approved by the owner of the mark.

Indeed, "a consumer need not believe that the owner of the mark actually produced the item and

placed it on the market. The public's belief that the mark's owner sponsored or otherwise

approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys*

*Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (citations

omitted).

Applying the relevant *Polaroid* factors to the evidence presented on the instant motion,

clearly establishes that All Granite has infringed the ARTISAN Trademarks, and are blatantly

attempting to confuse and deceive consumers into believing that it offers genuine ARTISAN

brand sinks and that the sinks it installs in consumers' home are, in fact, genuine ARTISAN

brand sinks— which they most definitely are not. In addition, there can be no doubt that All

Granite's false promotion of ARTISAN brand sinks in connection with its adoption and use of a

fleur-de-lis design mark is intended to cause, and indeed is likely to cause, confusion with the

ARTISAN Trademarks. Accordingly, Artisan has more than satisfied the test for a showing of

likelihood of confusion, and All Granite should be preliminarily enjoined from falsely promoting

its services by using the ARTISAN Trademarks and installing sinks bearing an infringing fleur-

de-lis design mark.

### a.    The Strength of the ARTISAN Trademarks Favors a Finding of a Likelihood of Confusion

The strength of a mark depends on its "distinctiveness . . . , or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993). The relative strength of a mark rests on two factors: (1) its intrinsic strength, *i.e.*, the "placement of the mark on the spectrum of marks," and (2) its commercial strength, *i.e.*, the "marketplace recognition of the mark." *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547, 1554 (S.D.N.Y. 1987).

Moreover, the degree of a mark's strength or distinctiveness determines "the degree of protection it will be accorded." *Lexington Mgt. Corp.*, 10 F. Supp. 2d at 279. As noted above, every registered trademark is *ipso facto* presumed to be distinctive. *Lois Sportswear*, 799 F.2d at 871. Accordingly, Artisan's federally registered ARTISAN mark is entitled to a presumption of distinctiveness, and therefore, strength. Similarly, Artisan's FLEUR-DE-LIS design mark, which is a unique and fanciful design, is also inherently distinctive.

Further, both the ARTISAN mark and the FLEUR-DE-LIS design mark have acquired "distinctiveness in the marketplace." *W.W.W. Pharm. Co. Inc. v. The Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993). A mark's distinctiveness in the marketplace, and, thus, its strength for purposes of the first *Polaroid* factor, is shown through such evidence as advertising expenditures on behalf of the product bearing the mark and sales success. *Id.* at 573; *Lexington Mgt. Corp.*, 10 F. Supp. 2d at 280 (the holder of a registered mark that is inherently distinctive is not required to prove "secondary meaning" in order to merit protection. However, such evidence as is ordinarily used to prove secondary meaning "is nonetheless indicative of the mark's strength").

Here, the evidence of record establishes that Artisan, and the products bearing the
ARTISAN Trademarks, due to the advertising and promotional efforts of Artisan as well as the
attention to quality, have met with significant commercial success in the marketplace and have
acquired strong brand recognition throughout the United States, and particularly in the New
York/New Jersey area.  Han Decl. ¶¶ 5, 9-10.  Accordingly, for purposes of trademark
infringement analysis, the strength of the ARTISAN Trademarks is substantial, and this factor
weighs in Artisan's favor.

> **b.    The Similarity Between the Marks at Issue Favors a Finding of
> a Likelihood of Confusion**

In determining the significance of this similarity, this Court must take into account both
the strength of the ARTISAN Trademarks and the extent to which All Granite has flagrantly used
these marks "in a manner that enhances rather than reduces the likelihood of confusion." *Bear
U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.*, 909 F. Supp. 896, 905 (S.D.N.Y.
1995).

In assessing similarity of the marks, courts look to the "overall impression" they create
and "the context in which they are found and consider the totality of factors that could cause
confusion among prospective purchasers." *Lexington Mgt. Corp.,* 10 F. Supp. 2d at 283-84,
*quoting Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993).
"Generally, two factors come into play on this front: '1) whether the similarity between the two
marks is likely to cause confusion and 2) what effect the similarity has upon prospective
purchasers.'"  *Id.* at 284, *quoting Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955,
962 (2d Cir. 1996).

In the instant action, All Granite is first using the ARTISAN mark to deliberately mislead

consumers into believing that All Granite will provide them with an authentic ARTISAN brand

sink. Indeed, Artisan's investigation demonstrated that All Granite's salespeople repeatedly

make specific and direct reference to the ARTISAN mark and ARTISAN brand sinks, and even

note to consumers the quality of Artisan's 16 gauge stainless steel construction as compared to

other sinks. Thereafter, All Granite furthers the confusion by installing inferior substitute sinks

in the consumers' homes that feature a fleur-de-lis design, which bears a striking resemblance to

Artisan's FLEUR-DE-LIS design mark. The use of this confusingly similar mark is obviously

designed to cover All Granite's tracks by further misleading consumers into believing that they

have, in fact, received an ARTISAN brand sink. As All Granite's blatantly uses the ARTISAN

mark to mislead consumers and then uses a confusingly similar fleur-de-lis design mark to

compound the confusion, the similarity between the marks at issue supports a finding of

likelihood of confusion and this factor weighs in Artisan's favor.

> **c.    The Parties' Goods Are In Close Competitive Proximity of One Another and There Is No Gap To Bridge**

The competitive proximity analysis "requires inquiry into the classification of the

products, the channels of trade through which the products move and their customer profiles."

*Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 917 (S.D.N.Y. 1992). The issue is "whether due to

the commercial proximity of the competitive products, consumers may be confused as to their

source." *Clinique Labs. Inc. v. Dep Corp.*, 945 F. Supp. 547, 553 (S.D.N.Y. 1996), *citing*

*Hasbro*, 858 F.2d at 77. When weighing the competitive proximity factor, however, where the

parties compete in the same market, as is the case here, there is no "gap to bridge", and this factor

tips in favor of a likelihood of confusion. *Kookai, S.A. v. Shabo*, 950 F. Supp. 605, 608

(S.D.N.Y. 1997) (where the products at issue compete directly against one another and are

targeted toward the same audience, "there is no 'gap' to bridge" and the factor "tips in favor of plaintiff").

Here, the products in question — kitchen sinks — are identical. Indeed, as part of All Granite's "bait and switch" scheme, All Granite substitutes sinks of unknown origin and of inferior quality for the ARTISAN brand sinks that they have led consumers to believe they will be receiving. Thus, this factor weighs heavily in favor of a finding of likelihood of confusion.

### d.    There Is Already Evidence of Actual Confusion

Although "[i]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act" (*Savin Corp.*, 391 F.3d at 459, *citing Lois Sportswear*, 799 F.2d at 875), if present, actual confusion is a very strong indicator of likelihood of confusion. *See, e.g., Conopco, Inc., v. Cosmair, Inc.*, 49 F. Supp. 242, 251 (S.D.N.Y. 1999); *Gucci v. Gucci Shops, Inc.,* 688 F. Supp. 916, 926 (S.D.N.Y. 1988) ("'there can be no more positive proof of likelihood of confusion than evidence of actual confusion'"), *quoting Lawn Tennis Assoc. v. British Tennis Agency*, 1 U.S.P.Q.2d 1283, 1288 (S.D.N.Y. 1986). Moreover, it is well-settled that a knowing or deliberate infringement of another's trademark rights creates a strong presumption of a likelihood of confusion. *See Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1228 (2d Cir. 1987); *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002) ("[w]here a second-comer acts in bad faith and intentionally copies a trademark or trade dress . . . a presumption arises that the copier has succeeded in causing confusion").

Here, Artisan is already aware of a number of instances of actual confusion with respect to All Granite's activities. Indeed, Artisan only learned of All Granite's infringing activities because it was contacted by customers of All Granite who were seeking to report problems with, or to seek accessories for, the sinks installed by All Granite that they were led to believe were

genuine ARTISAN brand sinks. Han Decl. ¶ 14. In light of the evidence of actual confusion as well as the evidence that All Granite has deliberately set out to infringe Artisan's trademark rights, this factor weighs heavily in Artisan's favor.

### e.    All Granite Has Acted in Bad Faith

The "bad faith" factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991); *OBH, Inc.*, 86 F. Supp. 2d at 187. A defendant's awareness of a plaintiff's use of a given mark to identify itself "can give rise to an inference of bad faith, [and][t]his inference [can be] bolstered by the further finding that [a defendant] proffered no credible innocent explanation for the [adoption of the plaintiff's mark]." *New York State Soc'y of Certified Public Accountants v. Eric Louis Assoc., Inc.*, 79 F. Supp. 2d 331, 348 (S.D.N.Y. 1999), *quoting Centaur Commc'ns*, 830 F.2d at 1228.

In this case, there can be no question but that All Granite was aware of Artisan's trademarks. Indeed, All Granite was an authorized dealer of ARTISAN brand sinks for a period of time and, to this day, continues to display a genuine ARTISAN brand sink in its showroom. Han Decl. ¶¶ 11-13, Muller Decl. ¶¶ 1-4, Ex. A. Further, All Granite's deceptive sales practices — informing consumers that they will receive genuine ARTISAN brand sinks and then installing inferior sinks bearing an infringing design mark — demonstrates that All Granite is using the ARTISAN Trademarks in bad faith. Davies Decl. ¶¶ 1-10. Where there is proof of defendant's intent to copy or trade upon another's good will, there is a presumption that the defendant has succeeded in creating a likelihood of confusion. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980) ("If there was intentional copying the second comer will be

19

presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded."). *See also OBH, Inc.*, 86 F. Supp. 2d at 187. "Once it is shown that a defendant deliberately engaged in a deceptive commercial practice, . . . a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion." *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 140 (2d Cir. 1991).

Defendants' "bad faith alone is sufficient to warrant the Court's inference that [its] actions were likely to cause confusion." *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 293, n.125 (S.D.N.Y. 2000). Viewed in combination with the other *Polaroid* factors that strongly evince likelihood of confusion, the evidence of defendants' Section 43(a) liability is overwhelming.

**f.    All Granite's Infringing Substitute Sinks Are of Inferior Quality**

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995). Given the exhaustive efforts that Artisan has put into ensuring that the products and services it offers to consumers are only of the highest quality, it is highly unlikely that All Granite could meet such exacting standards. Han Decl. ¶¶ 2-4. In fact, an examination of the substitute sink installed by All Granite as part of Artisan's investigation, as well as the complaints received by All Granite's customers concerning the substitute sinks, demonstrate that All Granite's substitute sinks are of inferior quality. Han Decl. ¶ 14, Amabile Decl. ¶¶ 7-8.

*A fortiori*, however, the true danger of permitting All Granite to infringe the ARTISAN Trademarks is that Artisan, despite its ownership of the mark and the goodwill associated with it, has absolutely no control over the quality of the goods All Granite is providing. In fact, at this point, Artisan has no way of knowing how many All Granite customers mistakenly believed that they received genuine ARTISAN brand sinks in conjunction with All Granite's countertop installation services. Unfortunately, however, any dissatisfaction amongst such consumers about the quality of the substitute infringing sink will negatively impact Artisan, not All Granite. Consequently, this factor weighs in Artisan's favor.

> **g.    Even Sophisticated Consumers Will Be Deceived by All Granite's Conduct**

In determining the impact of buyer sophistication, the Court "must consider the general impression of the ordinary purchaser, buying under the normally prevalent condition of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharm.*, 984 F.2d at 575. Generally, "the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the communications." *Bristol-Myers Squibb Co. v. McNeil-P.P.C. Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992).

While purchasers of kitchen countertops and sinks may be considered sophisticated, given All Granite's deceptive conduct there is very little even the most sophisticated consumer could do to avoid being misled by All Granite's infringing activity. Indeed, in the All Granite showroom, the consumer is shown a genuine ARTISAN brand sink and affirmatively informed that All Granite will install a genuine ARTISAN brand sink in conjunction with its countertop installation services. Davies Decl. ¶¶ 1-10. It is not until the actual installation that a consumer

could ever become aware that it is not receiving a genuine ARTISAN brand sink.  Amabile Decl. ¶¶ 1-8.  In view of All Granite's deliberately misleading conduct, this factor weighs in Artisan's favor.

### 3.    Artisan Has Demonstrated a Clean Sweep of the *Polaroid* Factors

Although a plaintiff need not demonstrate a "clean sweep" of the *Polaroid* factors in order to be entitled to relief on its motion, Artisan has demonstrated just that.  Here, each of the eight *Polaroid* factors supports a finding of likelihood of confusion: (1) the ARTISAN Trademarks are strong; (2) All Granite's use of the ARTISAN mark and a fleur-de-lis design that is substantially similar to Artisan's FLEUR-DE-LIS design mark; (3) the competitive proximity of the goods at issue; (4) the fact there is no "gap to bridge"; (5) the evidence of actual confusion; (6) All Granite's bad faith in using the ARTISAN Trademarks to deliberately mislead consumers; (7) the inferior quality of the infringing substitute sinks ultimately installed by All Granite; and (8) the deceptive conduct that is intended to mislead even the most sophisticated consumers.  Moreover, any doubt as to some of these factors should be resolved against All Granite, given its deceptive conduct and its palpable bad faith.

### D.    Artisan Will Continue to Suffer Irreparable Harm Unless Preliminary Relief is Granted

As Artisan has made a strong showing of likelihood of success on its false advertising, trademark infringement, and false designation of origin claims, Artisan is *entitled* to a presumption of irreparable harm.

Furthermore, it is well established that trademark laws are designed to protect the public from confusion over the source of goods or services.  *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000).  Accordingly, where the party seeking a preliminary injunction in a trademark case shows that it will "lose control over the reputation of its trademark

pending trial," the requirement of irreparable injury is satisfied.  *Power Test Petroleum Distribs.*
*v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985).  A trademark "epitomizes the goodwill of a
business.  This creation and perpetration of goodwill depends on customer recognition.  The
nature of goodwill is dictated by the consumer's desire to do business with the same seller.  The
buyer expects the same experience with each purchase — this is the reason *d'etre* for the sale."
*Id.*  at 97.  Here, the interest in protecting the public from All Granite's conduct is particularly
acute as All Granite intends to specifically deceive the public with respect to the brand of sinks it
installs in conjunction with its countertop installation services.

> **E.    In the Alternative, Artisan Has At Least Raised Serious Questions On the
> Merits and the Balance of Hardships Tips Decidedly in Its Favor**

Notwithstanding the foregoing, Artisan has at least raised serious questions going to the
merits and the balance of hardships tips decidedly in its favor.  Artisan has established a *prima
facie* case of its ownership and exclusive right to use the ARTISAN Trademarks.  Moreover,
Artisan has shown that its marks are distinctive for the goods in conjunction with which it uses
the marks, and through that inherent distinctiveness, as well as the public recognition associated
with the mark, the mark is a strong indicator of Artisan as the source of the goods for which it is
used.  Artisan has also shown that All Granite is using and intends to continue using the
ARTISAN Trademarks in order to deliberately mislead consumers.  Even if this Court
determines that Artisan has not established a likelihood of success on the merits, the Court
should nonetheless conclude that the foregoing facts raise "questions going to the merits so
serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus
for more deliberate investigation."  *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740
(2d Cir. 1953).  This less rigorous, more relaxed standard of review requires a further inquiry into

the "balance of hardships" suffered by the parties. *See Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir. 1993); *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981).

As noted above, Artisan, which has carefully built a reputation for excellence and goodwill in connection with its high quality kitchen sinks, is suffering and will continue to suffer irreparable injury because of All Granite's infringement of the ARTISAN Trademarks and the false advertising associated therewith. This harm — in the form of diminished goodwill represented by the mark, jeopardy of the mark in becoming generic or non-distinctive, and inability of the plaintiff to control the use of a valuable mark it owns — threatens the goodwill that Artisan has carefully developed during the company's existence.

On the other hand, the harm suffered by All Granite if the injunction is granted is slight. All Granite will be able to continue to conduct its business, it will just have to do so without making reference to the ARTISAN Trademarks or utilizing the infringing fleur-de-lis design mark. Accordingly, any potential harm to All Granite, is slight in comparison to the permanent, severe, and irreversible injury to Artisan that will result if the injunction is not granted.

## II.    ARTISAN IS ENTITLED TO A TEMPORARY RESTRAINING ORDER

For the reasons set forth in the accompanying declarations, and the exhibits thereto, submitted pursuant to Fed. R. Civ. P. 65(b) and this Court's Local Rule 6.1(d), Artisan has "good and sufficient reasons" for proceeding by order to show cause to request a temporary restraining order immediately restraining All Granite from continuing its infringing and deceptive conduct.

Temporary restraining orders are issued for the purpose of preserving the status quo and preventing irreparable harm for so long as may be required to hear and determine a preliminary injunction motion. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974). Rule 65(b) authorizes the issuance of a temporary restraining

order where "it clearly appears from the specific facts shown by affidavit that immediate and irreparable injury will result to the applicant."

It is readily apparent from the evidence on the instant motion that All Granite intends to continue its unlawful activity. Indeed, despite being put on notice of its infringing and unlawful activity and receiving a demand for remedial action, All Granite denied all wrongdoing and refused to accede to any of Artisan's demands. As All Granite continues to display a genuine ARTISAN brand sink in its showroom, which it concedes it does not sell, it is readily apparent that Artisan will continue to suffer immediate and irreparable injury unless immediate injunctive relief is entered by the Court.

## III.    ARTISAN IS ENTITLED TO AN ORDER OF EXPEDITED DISCOVERY

Courts have broad power to permit expedited discovery in appropriate cases. *See, e.g.,* Fed. R. Civ. P. 34(b) (expressly providing, with respect to document requests, that "[a] shorter or longer time [to respond] may be directed by the court"). Such discovery is routinely granted in actions involving intellectual property infringement. *See, e.g., Behnam Jewelry Corp. v. Aron Basha Corp.*, 1997 WL 639037 at *20 (S.D.N.Y. Oct. 14, 1997); *Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway*, 858 F. Supp. 1268, 1269 (S.D.N.Y. 1994); *Francis S. Denney, Inc. v. I.S. Lab, Inc.*, 737 F. Supp. 247, 248 (S.D.N.Y. 1990); *Recycled Paper Prods., Inc. v. Pat Fashions Indus., Inc.*, 731 F. Supp. 624, 625 (S.D.N.Y. 1990).

Courts have determined that expedited discovery is appropriate where a plaintiff demonstrates: (1) irreparable injury; (2) some likelihood of success on the merits of its claims; (3) some connection between expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendants will suffer if expedited relief is granted. *Advanced Portfolio Tech.,*

*Inc. v. Advanced Portfolio Tech., Ltd.*, 1994 WL 719696, at *3 (S.D.N.Y. Dec. 28, 1994);
*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y.
1990) (granting expedited discovery because the inquiry "may very well lead to evidence of
continuing infringement by this defendant or others; it may also lead to the discovery of future
plans to infringe").  Here, as demonstrated above, Artisan easily satisfies these elements.

Expedited discovery is needed so that the true scope of All Granite's unlawful activity
may become immediately known.  Specifically, the expedited discovery requested by Artisan is
intended to reveal the number of All Granite customers that may have been misled into believing
that they were receiving authentic ARTISAN brand sinks, the identities of those customers so
that they can be put on notice that the sinks installed by All Granite were not authentic
ARTISAN brand sinks, the volume of infringing goods that All Granite has introduced to the
market, and the identity of the manufacturer of the infringing sinks.

Artisan respectfully requests that this Court enter an Order requiring All Granite to
produce no later than seven (7) days prior to the hearing on Artisan's application for a
preliminary injunction, all documents responsive to the Artisan's First Request for the
Production of Documents, attached to the declaration of Louis S. Ederer as Exhibit C, and to
produce for deposition the two salespeople involved in the sale of the countertop and countertop
installation described in the declarations of Allison Davies and Joseph Amabile, as well as a
witness most knowledgeable about the topics set forth in the Fed. R. Civ. P. 30(b)(6) Notice of
Deposition attached to the declaration of Louis S. Ederer as Exhibit D.

## CONCLUSION

For the foregoing reasons, Artisan's motion for a preliminary injunction, temporary restraining order, and order for expedited discovery should be granted in all respects.

Dated: New York, New York
       January 9, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
Eleanor Lackman (EL 3668)
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff*

27