**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
                                 :

ARTISAN MANUFACTURING CORPORATION,   :     Civil Action No.:
                                 :     07 cv 11278 (WHP)

               Plaintiff,             :

          - against -              :

ALL GRANITE & MARBLE CORPORATION.,     :

              Defendant.           :

------------------------------------------------------------- x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

ARNOLD & PORTER LLP
Louis S. Ederer
John Maltbie
Eleanor Lackman
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff Artisan Manufacturing Corporation*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 2

I.    ARTISAN IS ENTITLED TO A PRELIMINARY
INJUNCTION ................................................................................ 2

    A.    Artisan Is Entitled to a Preliminary Injunction on Its
Claim for False Advertising ................................................. 3

    B.    Artisan Is Entitled to a Preliminary Injunction on Its
Claims for Trademark Infringement and False
Designation of Origin .......................................................... 4

        1.    Artisan's Trademarks Are Valid and Entitled to
Protection Under the Lanham Act ............................. 4

        2.    Artisan Has Established a Likelihood of
Confusion .................................................................. 4

    C.    Artisan Will Continue to Suffer Irreparable Harm Unless
Preliminary Relief is Granted .............................................. 9

CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barturen v. Wild Edibles, Inc.*, No. 07 Civ. 8127(LLS), 2007 WL
4468656, *3 fn.5 (S.D.N.Y. Dec. 18, 2007) ...................................................7

*Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 250 (S.D.N.Y. 1999), *aff'd*,
216 F.3d 1071 (2d Cir. 2000)..................................................................3, 4

*Cache, Inc. v. M.Z. Berger & Co.*, No 99 Civ. 12320 (JGK) 2001 WL
38283 (S.D.N.Y. Jan. 16, 2001)..............................................................7

*Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217 (2d Cir.
1987) .........................................................................................................5

*Conopco, Inc., v. Cosmair, Inc.*, 49 F. Supp. 2d 242 (S.D.N.Y. 1999) ...............5

*De Venustas v. Venustas Intern., LLC*, No. Civ. 4530 (LTS) (THK) 2007
WL 2597122 (S.D.N.Y. Sept. 11, 2007)....................................................5

*Donahue v. Artisian Ent't, Inc.*, No. 00 Civ. 8326 (JGK) 2002 WL
523407, at *8-9 (S.D.N.Y. Apr. 8, 2002)....................................................7

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277
(S.D.N.Y. 2000) ........................................................................................7

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d
Cir. 2002) ..................................................................................................3

*Francis S. Denney, Inc. v. I.S. Lab, Inc.*, 737 F. Supp. 247 (S.D.N.Y.
1990) .........................................................................................................5

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir.
1997) .........................................................................................................7

*Glaxo Warner-Lambert OTC G.P. v. Johnson & Johnson Merck Consumer
Pharm. Co.*, 935 F. Supp. 327 (S.D.N.Y. 1996) ......................................3

*GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273 (S.D.N.Y. 2002) ........5

*Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988) .........................5

*Johnson v. Newport Lorillard*, No. 01 Civ. 9587(SAS), 2003 WL 169797
(S.D.N.Y. Jan. 23, 2003)...........................................................................7

*Kookai, S.A. v. Shabo*, 950 F. Supp. 605 (S.D.N.Y. 1997).....................................8

*Lawn Tennis Assoc. v. British Tennis Agency*, 1 U.S.P.Q.2d 1283
(S.D.N.Y. 1986).................................................................................5

*Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.
1986).........................................................................................4, 8

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800 (2d Cir. 1981).......................5

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ..................... *passim*

*Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, No.
07 Civ. 00349(RJH), 2007 WL 704171 (S.D.N.Y. Mar. 7, 2007)..............................7

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*,
926 F.2d 134 (2d Cir. 1991)..................................................................5

*SEC v. Musella*, 578 F. Supp. 425 (S.D.N.Y. 1984)...........................................7

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995)..........................9

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141 (2d Cir. 2003) ...............................4, 5

*Zeneca Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452 (JGK), 1999 WL 509471
(S.D.N.Y. Jul. 19, 1999) ....................................................................7

## STATUTES AND FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Evid. 801 ............................................................................7

Fed. R. Evid. 803 ............................................................................7

## PRELIMINARY STATEMENT

When the parties appeared before the Court on Artisan's Order to Show Cause on January 11, 2008, defendant All Granite asserted that whatever may have happened when Artisan's private investigator visited All Granite's South Plainfield showroom on two occasions in November 2007 was a one-time occurrence and that Artisan would not be able to show that it had happened to anyone else. Following the conclusion of expedited discovery, it is readily apparent that this statement is completely untrue.

Artisan has now identified as many as eight different All Granite customers who have contacted Artisan since September 2007 who were led to believe by All Granite that All Granite had provided them with an Artisan sink. The identities of the individuals have been confirmed to be All Granite customers by All Granite's own records. Amabile Supp. Decl., ¶15, Ex. E. Further, two of these individuals have provided signed declarations attesting to the fact that All Granite directly informed them that All Granite had, or would be, installing an Artisan sink in their homes. Amabile Supp. Decl., ¶¶8-9, Exs. A-B. Notably, in one instance the representation was made by the manager of All Granite's South Plainfield showroom. Amabile Supp. Decl., Ex. A. Moreover, these two witnesses have also attested to the fact that they were confused by All Granite's use of a design on the sink that mimics elements of Artisan's design. Amabile Supp. Decl., Ex. A-B. In addition, two other All Granite customers who were confused into believing that they had received an Artisan sink were provided with a spec sheet labeled "Aristan AUD-23210-D9 Undermount Single Bowl Kitchen/Bar" by All Granite, which despite the misspelling of Artisan's name, lists an accurate Artisan model number and accurate Artisan sink measurements. Amabile Supp. Decl., ¶¶13-14, 16, Ex. D-E. As Artisan asserted at the January 11, 2008 hearing, and as the evidence bears out, this was no one-time occurrence.

Rather, the experience of these All Granite customers, who received their sinks from both All Granite's Ridgefield Park and South Plainfield locations and were assisted by a variety of different salespeople, only serves to confirm the experience of Artisan's private investigator, who during her two visits to All Granite's South Plainfield showroom was told by two different All Granite salespeople that both sinks she expressed interest in were Artisan sinks. Davies Decl., ¶¶ 1-10. Moreover, the existence of the "Aristan" spec sheet was confirmed by Artisan's Regional Sales Manager, Joseph Amabile, who saw the sheet, as well as another sheet listing an Artisan model number, when he visited All Granite's Ridgefield Park and South Plainfield showrooms in June-July 2007. Amabile Supp. Decl., ¶¶1-3. In sum, based upon all the evidence of record, it is clear that All Granite's claim that this was a one-time occurrence, or its more recently concocted assertions that this case is really brought because Artisan lost All Granite as a customer, or that any confusion was merely the result of All Granite altruistic efforts to refer business to Artisan, are completely unsupported by the evidence of record. Further, in view of the overwhelming evidence of actual confusion, it has become apparent that most, if not all, of All Granite's witnesses failed to testify truthfully at their depositions. As a result, it is clear that All Granite's unlawful conduct was part of an organized campaign to pass off its sinks as Artisan sinks in order to ride the coattails of the marketing and promotional efforts Artisan has put behind its brand and the reputation that Artisan has established for high quality products.

## **ARGUMENT**

### I.    **ARTISAN IS ENTITLED TO A PRELIMINARY INJUNCTION**

In order to obtain preliminary injunctive relief, Artisan must show that it "(1) is threatened with irreparable injury absent an injunction and (2) either (a) is likely to prevail on the merits or (b) has raised serious questions going to the merits and the balance of hardships tips

decidedly in its favor." *Bear U.S.A., Inc.*, 71 F. Supp. 2d at 250. Based on the evidence of record, Artisan has plainly met its burden.

### A.    Artisan Is Entitled to a Preliminary Injunction on Its False Advertising Claim

In order to succeed on its false advertising claim, Artisan "must demonstrate either (1) the challenged advertisement is literally false, or (2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers." *Glaxo Warner-Lambert OTC G.P.*, 935 F. Supp. at 328. Further, "irreparable harm is presumed when the plaintiff can demonstrate a likelihood of success in showing defendant's advertisement was literally false." *Id.*

Here, All Granite claims that Artisan will not be able to succeed on its claim for false advertising because All Granite does not use Artisan's trademarks in its advertising and because the use of the Artisan trademarks, if any, was limited to All Granite's showrooms and not directed to the public at large. While it appears to be true that All Granite does not use Artisan's trademarks in its "free" sinks coupon, the literal falsity of All Granite's "free" sink coupon has been established based on Mr. Deja's testimony, in which he acknowledged that All Granite's sinks have never been sold or advertised for the $320 to $540 value claimed in the coupon, and stated the values listed in the coupon actually reflect the value of the combination of two different sinks — not one, which is what is promised to the consumer. Maltbie Decl., Ex. K at 56:12 - 59:13. Moreover, the combination of All Granite's literally false coupons with the misrepresentations made by All Granite to customers concerning the installation of purported Artisan sinks, which are also literally false, establishes the "organized campaign" required under Second Circuit law to establish a false advertising claim. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002).

**B.    Artisan Is Entitled to a Preliminary Injunction on Its Claims for Trademark Infringement and False Designation of Origin**

In addition, Artisan is also likely to succeed on the merits for its claims of trademark infringement and false designation of origin. With respect to either claim, Artisan must demonstrate that (1) it has a valid mark that is entitled to protection under the Lanham Act, and (2) use of the defendant's mark infringes, or is likely to infringe, plaintiff's mark. *See, e.g., Virgin Enters. Ltd.*, 335 F.3d at 146. Moreover, once Artisan demonstrates likelihood of confusion, irreparable harm is presumed. *Bear U.S.A.*, 71 F. Supp. 2d at 250.

**1.    The Artisan Trademarks Are Valid and Protectable**

As a preliminary matter, there can be no question as to the validity of Artisan's trademarks. As Artisan is the owner of U.S. Trademark Reg. No. 2,964,024 for the mark ARTISAN, for use in connection with sinks and related products in Class 11, the registered ARTISAN mark is "presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear U.S.A.*, 799 F.2d at 871. Moreover, Artisan's unregistered FLEUR-DE-LIS design mark, which has been used exclusively in commerce in connection with sinks by Artisan since August 2003, is valid and protectable under the Lanham Act as well. In fact, the three pending trademark applications, which were not merely filed in conjunction with this lawsuit, have each been approved for publication by the Trademark Office without requiring Artisan to demonstrate secondary meaning, indicating that the Trademark Office has found the mark to be inherently distinctive, and therefore protectable and enforceable as a trademark. Maltbie Decl., Exs. A-C.

**2.    Artisan Has Established a Likelihood of Confusion**

It is also clear that an application of the relevant *Polaroid* factors clearly establishes that All Granite has infringed the Artisan's trademarks. Under the Lanham Act, the existence of

4

actual consumer confusion is strong evidence that a likelihood of consumer confusion exists. *Virgin Enter. Ltd.*, 335 F .3d at 151; *De Venustas v. Venustas Intern., LLC*, No. Civ. 4530 (LTS) (THK) 2007 WL 2597122, at *6 (S.D.N.Y. Sept. 11, 2007). In fact, this Court has repeatedly held that "there can be no more positive proof of likelihood of confusion than evidence of actual confusion." *Gucci*, 688 F. Supp. at 926, *quoting Lawn Tennis Assoc.*, 1 U.S.P.Q.2d at 1288; *see also Conopco, Inc.*, 49 F. Supp. 2d at 251; *Francis S. Denney, Inc.*, 758 F. Supp. at 143-44 ("instances of actual confusion are extremely persuasive evidence of likelihood of confusion")

Moreover, it is well-settled that a knowing or deliberate infringement of another's trademark rights creates a strong presumption of a likelihood of confusion. *See, e.g., Centaur Commc'ns, Ltd.*, 830 F.2d at 1228; *GTFM, Inc.*, 215 F. Supp. 2d at 297. Thus, where there is proof of defendant's intent to copy or trade upon another's good will, there is a presumption that the defendant has succeeded in creating a likelihood of confusion. *Perfect Fit Indus., Inc.*, 618 F.2d at 954. Accordingly, "[o]nce it is shown that a defendant deliberately engaged in a deceptive commercial practice, . . . a powerful inference may be drawn that the defendant has succeeded in confusing the public. Therefore, upon a proper showing of such deliberate conduct, the burden shifts to the defendant to demonstrate the absence of consumer confusion." *Resource Developers, Inc.*, 926 F.2d at 140.

Here, the record is replete with uncontroverted evidence of actual consumer confusion, as well as evidence that All Granite engaged in a deliberate scheme to deceive consumers into believing that they would receive Artisan sinks in connection with the countertop installations. To date, Artisan has elicited the following evidence of actual consumer confusion:

- The signed declaration of Charles Nagle of Bridgewater, New Jersey, who contacted Artisan with a question about sink measurements, and who believed that the sink that All Granite installed in his home was an Artisan brand sink. However, the sink that

he had received from All Granite was not an Artisan brand sink. Amabile Decl., ¶10, Ex. A.

- The signed declaration of Alice Anderson of Butler, New Jersey, who contacted Artisan looking for a bottom grid and who believed that the sink that All Granite installed in her home was an Artisan brand sink. However, the sink that she had received from All Granite was not an Artisan brand sink. Amabile Decl. ¶11, Ex. B.

- A contact from Robert Lezinski of Berkeley Heights, New Jersey, who contacted Artisan looking for a bottom grid for a sink he had received from All Granite and who believed that the sink that All Granite installed in his home was an Artisan brand sink. However, the sink that Mr. Lezinski received from All Granite was not an Artisan brand sink. Amabile Decl., ¶¶4-6.

- A contact from Richard Anderson of Morristown, New Jersey, who contacted Artisan to confirm that Artisan sinks were made of 16 gauge stainless steel and to raise an issue with respect to a measurement discrepancy between a spec sheet he had apparently received from All Granite and the measurements listed on Artisan's web site, and who believed that the sink that All Granite installed in his home was an Artisan brand sink. However, the sink that Mr. Anderson received from All Granite was not an Artisan brand sink. Amabile Decl., ¶¶7-8.

- A contact from Paul Conrad of Washington Township, New Jersey, who was looking for bottom grids for the sinks that All Granite had installed in his home and his daughter's home, and who believed that the sinks that All Granite installed were Artisan brand sinks. However, the sinks that Mr. Conrad and his daughter received from All Granite were not Artisan brand sinks. Amabile Decl., ¶12.

- A contact from Larry Luchan of Demarest, New Jersey, who believed that All Granite had installed an Artisan brand sink in his home. However, the sink that Mr. Luchan received from All Granite was not an Artisan brand sink. Amabile Decl., ¶12.

- A contact from Lynn Poynter of Massapequa, New York, who contacted Artisan looking for a bottom grid for the sink that All Granite had installed in her home, who believed that she had received an Artisan brand sink from All Granite, and who had received a spec sheet for a sink identified as "Aristan AUD-23210-D9 Undermount Single Bowl Kitchen/Bar" from All Granite. However, the sink that Ms. Poynter received from All Granite was not an Artisan brand sink. Amabile Decl., ¶¶13-14; Exs. C-D.

- A contact from Sheryl Vogel of West Nyack, New York, who contacted Artisan looking for a bottom grid for the sink that All Granite had installed in her home, who believed that she had received an Artisan brand sink from All Granite, and who had received a spec sheet that identified Artisan as the manufacturer of the sink from All Granite. However, the sink that Ms. Vogel had received from All Granite was not an Artisan brand sink. Amabile Decl., ¶16.

Rather than dispute the substance of these facts, All Granite takes the position that the evidence of bad faith and actual confusion proffered by Artisan is inadmissible hearsay. These statements, however, are admissible because they are not being offered by Artisan for the truth, but, rather, for the third party's state of mind. Fed. R. Evid. 801(c), 803(3); *see, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997) (holding admissible sales manager's testimony because it was "probative of the declarant's confusion" and was "received to show the declarant's then-existing state of mind"); *Donahue v. Artisian Ent't, Inc.*, No. 00 Civ. 8326 (JGK) 2002 WL 523407, at *8-9 (S.D.N.Y. Apr. 8, 2002) (testimony as to "statements that indicate actual confusion . . . are admissible to show the declarant's state of mind"); *Cache, Inc. v. M.Z. Berger & Co.*, No 99 Civ. 12320 (JGK) 2001 WL 38283 at *9 (S.D.N.Y. Jan. 16, 2001) (anecdotal evidence of actual confusion "may be received into evidence to show the declarant's state of mind").

Moreover, it is well established in this Court that hearsay evidence may be considered by the court in deciding a motion for a preliminary injunction. *See, e.g., Barturen v. Wild Edibles, Inc.*, No. 07 Civ. 8127(LLS), 2007 WL 4468656, *3 fn.5 (S.D.N.Y. Dec. 18, 2007); *Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC*, No. 07 Civ. 00349(RJH), 2007 WL 704171, *5 fn.5 (S.D.N.Y. Mar. 7, 2007); *Johnson v. Newport Lorillard*, No. 01 Civ. 9587(SAS), 2003 WL 169797, *1 (S.D.N.Y. Jan. 23, 2003); *Zeneca Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452 (JGK), 1999 WL 509471, *2 (S.D.N.Y. Jul. 19, 1999); *SEC v. Musella*, 578 F. Supp. 425, 427-29 (S.D.N.Y. 1984). Accordingly, the overwhelming evidence of actual confusion along with All Granite's "bad faith" is "sufficient to warrant the Court's inference that [All Granite's] actions were likely to cause confusion." *E.G.L. Gem Lab Ltd.*, 90 F. Supp. 2d at 293, n.125.

In addition to actual confusion and bad faith, each of the remaining *Polaroid* factors also

favors a finding of likelihood of confusion. As noted above, the registered ARTISAN mark is

"presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear*

*U.S.A.*, 799 F.2d at 871. Meanwhile, Artisan's FLEUR-DE-LIS mark has been supported by

substantial advertising and promotional support and has been found by the Trademark Office to

be inherently distinctive. Accordingly, the Artisan trademarks are strong marks.

Next, with respect to similarity of the marks, All Granite's claim that it "made a

conscious effort to avoid being associated with Artisan once it decided to distribute its own

sinks" (Deja Decl. ¶ 31), is belied by (i) the direct use of the ARTISAN trademark by All

Granite's salespeople (Davies Decl. ¶1-10); (ii) the use of the "Aristan" spec sheet in All

Granite's showrooms depicting an Artisan sink (Amabile Supp. Decl., ¶¶13-14, 16, Exs. C-D);

and (iii) the fact that All Granite chose to use a crown design that incorporates a fleur-de-lis

design element and subsequently altered the crown design to frame it with curling design

elements just like Artisan's design (Maltbie Decl., Ex. I at 22:12 - 23:2; Ex. K at 108:11;110:11).

Further, All Granite's claim that the parties' products are not in competitive proximity

because All Granite sells countertops and Artisan sells sinks is similarly without merit, as once

All Granite began to source and distribute it own sinks, it entered into direct competition with

Artisan. Moreover, where parties compete in the same market, as is the case here, there is no

"gap to bridge", and this factor also tips in favor of a likelihood of confusion. *Kookai, S.A.*, 950

F. Supp. at 608. As for the quality of All Granite's infringing sinks, the evidence demonstrates

that All Granite has been passing off its 18 gauge stainless steel sinks as 16 gauge stainless steel

Artisan sinks. While 18 gauge stainless steel may be acceptable for use in sinks, All Granite's

sinks are simply not manufactured of 16 gauge stainless steel. Davies Decl, ¶¶1-10; Amabile

Decl., ¶¶4-6, 11-12. Finally, with respect to sophistication of the consumers, given All Granite's

deceptive conduct there is very little even the most sophisticated consumer could do to avoid being misled by All Granite's infringing activity. Indeed, all of the evidence of actual consumer confusion demonstrates that All Granite has been very successful in misleading consumers in spite of the sophistication of the customers. In fact, Mr. Nagle indicated that he would not have accepted All Granite "free" sink had he been informed that All Granite was not going to be installing an Artisan sink. Amabile Decl., Ex. A.

Accordingly, Artisan has demonstrated that each of the eight *Polaroid* factors supports a finding of likelihood of confusion. Moreover, any doubt as to some of these factors should be resolved against All Granite, given its deceptive conduct and its palpable bad faith.

### C. Artisan Will Continue to Suffer Irreparable Harm Unless Preliminary Relief is Granted

As Artisan has made a strong showing of likelihood of success on its false advertising, trademark infringement, and false designation of origin claims, Artisan is *entitled* to a presumption of irreparable harm. Notwithstanding the foregoing, Artisan has at least raised serious questions going to the merits and the balance of hardships tips decidedly in its favor.

Further, the allegation that Artisan has sat on its rights, or otherwise delayed bringing this motion, is completely without merit. As explained in the declaration of Joseph Amabile, once Artisan discovered that All Granite was apparently engaged in deliberately misleading consumers into believing that they would be receiving Artisan sinks from All Granite, Artisan began an immediate investigation and promptly filed this lawsuit and its motion for preliminary injunctive shortly thereafter. Amabile Supp. Decl., ¶¶1-3. The case cited by All Granite, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995), where the plaintiff, after learning of the allegedly infringing activity, waited nine months to file suit and an additional four months before

filing its motion for preliminary injunction, has no application here. There has been no delay.

Moreover, through the course of expedited discovery Artisan has learned the true scope of All Granite's infringing activity. While All Granite represented to the Court at the January 11, 2008 hearing that it installed approximately 100 sinks a month, All Granite has now admitted that it actually installs as many as 200-300 sinks a week, or 800 to 1,200 sinks a month, with nearly half of those installations of sinks coming from All Granite's own sink inventory. Maltbie Decl., Ex. K at 43:2 - 44-12. Moreover, All Granite has admitted that it has continued to install the allegedly infringing sinks at this pace since the January 11, 2008 conference, and despite the Temporary Restraining Order entered by the Court, based on its interpretation of an offhand comment made by the Court during the hearing. Maltbie Decl., Ex. K at 180:6-181:13. In addition to demonstrating that Artisan continues to suffer irreparable harm, All Granite's conduct violates the terms of the Court's January 11, 2008 Temporary Restraining Order.

Finally, now that the true scope of All Granite's activity is known, it is apparent that the potential irreparable harm to Artisan is particularly acute as there may be several thousand All Granite customers who believe that the sink in their kitchen is an Artisan sink, when in fact, it is not. On the other hand, the harm suffered by All Granite if the injunction is granted is slight. All Granite will be able to continue to conduct its core business, it will just have to do so without making reference to the Artisan trademarks or utilizing the infringing fleur-de-lis design mark. Given that All Granite has had two months since Artisan first put All Granite on notice of its infringing conduct to order replacement sinks and that All Granite claims to have remaining inventory without the infringing design (Maltbie Decl., Ex. K at 112:9-16), it is clear that any potential harm to All Granite is slight in comparison to the permanent, severe, and irreversible injury to Artisan that will result if the injunction is not granted.

10

## **CONCLUSION**

For the foregoing reasons, Artisan's motion for a preliminary injunction should be granted in all respects.

Dated: New York, New York
        February 27, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____

Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
Eleanor Lackman (EL 3668)
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Plaintiff Artisan Manufacturing Corp.*

11