UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

ARTISAN MANUFACTURING :
COPORATION,
          Plaintiff, :   07 Civ. 11278 (WHP)

    -against- :   <u>MEMORANDUM AND ORDER</u>

ALL GRANITE & MARBLE :
CORPORATION,
           :
          Defendant.
------------------------------X

WILLIAM H. PAULEY III, District Judge:

      Plaintiff Artisan Manufacturing Corp. ("Artisan") brings this action against Defendant All Granite & Marble Corporation ("AGM") seeking injunctive relief and damages pursuant to §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), common law trademark infringement, unfair competition, unjust enrichment, and violations of New York General Business Law §§ 349, 350, and 360-1. Artisan moves for a preliminary injunction pursuant to its Lanham Act claims. For the following reasons, Artisan's motion is granted.

BACKGROUND

      Artisan manufactures and sells sinks through authorized dealers. (Declaration of Alex Han dated Jan. 8, 2008 ("Han Decl.") ¶¶ 2, 6.) It manufactures sixteen-gauge sinks, which are more resistant to stains and corrosion than higher gauge sinks. (Han Decl. ¶ 3.) The parties dispute whether Artisan also manufactures eighteen-gauge sinks. (Declaration of Jon Chido, Esq. dated Feb. 20, 2008 ("Chido Decl.") Ex. O: IAPMO Certificate and Listing effective April 2007.) Artisan uses two trademarks: (1) the Artisan name, which has been registered as U.S.

Registration No. 2,964,024 for use in connection with sinks (the "Artisan Mark"); and (2) a fleur de lis design mark, which is subject to pending applications for use in connection with sinks, bottom grids and draining baskets, and kitchen and bath accessories (the "Fleur De Lis Mark"). (Han Decl. ¶¶ 7-8.) The Fleur De Lis Mark is located on the inner surface of the sink and features a traditional fleur de lis shape with two tulip-shaped figures emanating from the base. (Han Decl. Ex. D: Artisan Advertising featuring the Fleur De Lis Mark.) Artisan has spent more than $400,000 since 2003 in advertising and promoting its products. (Han Decl. ¶ 9.)

AGM fabricates and installs marble and granite countertops. (Declaration of Robert Deja dated Feb. 19, 2008 ("Deja Decl.") ¶ 2.) AGM provides free sinks to customers who purchase a granite countertop. (Deja Decl. ¶ 9.) AGM was an authorized dealer of Artisan's sinks until the summer of 2006. (Han Decl. ¶¶ 11-13; Deja Decl. ¶ 28.) AGM then began distributing its own eighteen-gauge sinks, some of which bear a mark on the inner surface of a three-pronged crown with swirled designs emanating from the base of the crown (the "Crown Mark"). (Deja Decl. ¶¶ 27, 37, Ex. H: Photograph of the Crown Mark.) AGM, a Polish-owned business, asserts the Crown Mark was inspired by the crown of King Boleslaw I of Poland. (Declaration of Sebastian Sroka dated Feb. 20, 2008 ¶¶ 5-8.)

In October 2007, Artisan was contacted by a customer who believed he had received an Artisan sink with a countertop he purchased from AGM. (Han Decl. ¶ 14; Supplemental Declaration of Joseph Amabile dated Feb. 27, 2008 ("Amabile Supp. Decl.") ¶ 4.) Artisan visited the customer's home and determined that the sink was not an Artisan sink. (Amabile Supp. Decl. ¶ 5.) Subsequently, in November 2007, Artisan hired a private investigator who visited an AGM showroom, posing as a potential customer. An AGM salesperson promised the investigator a free Artisan sink with her purchase. (Declaration of

2

Allison Davies dated Jan. 7, 2008 ("Davies Decl.") ¶¶ 3, 5, 7.) As part of its investigation, Artisan ordered a countertop and sink for the home of an Artisan regional sales manager. The sink that was installed was not an Artisan sink, but bore the Crown Mark. (Declaration of Joseph Amabile dated Jan. 8, 2008 ("Amabile Decl.") ¶¶ 4-5, 8, Ex. A: Photograph of sink.) Between October 2007 and February 2008, seven additional customers told Artisan they had received Artisan sinks from AGM, including at least two who stated AGM salespersons told them they would receive an Artisan sink. (Amabile Supp. Decl. ¶¶ 7-16, Ex. A: Declaration of Charles Nagle dated Feb. 27, 2008 ("Nagle Decl.") ¶ 8, Ex. B: Declaration of Alice Anderson dated Jan. 31, 2008 ("Anderson Decl.") ¶ 5.) One customer believed the Crown Mark on her sink was the same as the Fleur De Lis Mark she saw on Artisan's website when she was searching for accessories for the sink. (Anderson Decl. ¶¶ 5-6.) Another believed that the sink he saw at an AGM showroom was an Artisan sink because of the mark he saw on the sink. (Nagle Decl. ¶ 6.)

      One entity utilizes a fleur de lis shape and another employs the name Artisan in the marketing of sinks. Paini S.P.A. Rubinetterie, an Italian corporation, has registered a trademark that includes a fleur de lis shape for use with sinks. (Chido Decl. Ex. T: USPTO trademark print-outs.) The mark includes the fleur de lis shape as part of a design with a horse, a shield and the word "Latoscana." (Chido Decl. Ex. T.) Franke, a Swiss corporation, markets a sink described as the "Franke Artisan Inset Sink." (Chido Decl. Ex. T.)

## DISCUSSION

I. <u>Legal Standard</u>

      To obtain a preliminary injunction the moving party must demonstrate (1) irreparable harm without the injunction, and (2) either (a) a likelihood of success of the merits or

(b) sufficiently serious questions going to the merits of the case and that the balance of hardships tips in its favor. D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 310 (2d Cir. 2006). In the trademark infringement context, a requisite showing of success on the merits generally establishes a risk of irreparable harm. See Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 78 (2d Cir.1988)

II. Trademark Infringement

To obtain injunctive relief under either §§ 32 or 43(a) of the Lanham Act, plaintiff must establish ownership of a valid trademark and that "defendant's use of the trademark creates a likelihood of confusion as to the source of the goods." Gucci Am. Inc. v. Action Activewear, Inc., 759 F. Supp. 1060, 1063 (S.D.N.Y. 1991) (citing Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986)).

A. Protection of the Marks

To be entitled to protection a mark must be "sufficiently distinctive" either because it is "inherently distinctive"—i.e., its intrinsic nature serves to identify its particular source—or because it has acquired a "secondary meaning" in the minds of consumers. Star Indus., 412 F.3d at 381. "Secondary meaning means 'the extent to which the public has come to identify the mark with a particular product.'" Lexington Mgmt. Corp. v. Lexington Capital Partners, 10 F. Supp. 2d 271, 280 (S.D.N.Y. 1998) (quoting W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 573 (2d Cir.1993)).

In determining whether a mark is "inherently distinctive", courts consider what type of trademark is at issue—generic, descriptive, suggestive, or arbitrary and fanciful. Lois Sportswear, 799 F.2d at 871. "A generic [mark] is one that refers, or has come to be understood

as referring, to the genus of which the particular product is a species." Abercrombie & Fitch Co. v. Hunting World, Inc, 537 F.2d 4, 9 (2d Cir. 1976). "A [mark] is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A [mark] is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." Abercrombie, 537 F.2d at 10. Generic marks are never protectable; suggestive and arbitrary or fanciful marks are inherently distinctive and therefore, protectable; and if a mark is descriptive, the plaintiff must establish that it has acquired secondary meaning. Paddington Corp. v. Attiki Imps. & Distribs., Inc., 996 F.2d 577, 583 (2d Cir. 1993). In addition, "registered trademarks are presumed to be distinctive and should be afforded the utmost protection." Lois Sportswear, 799 F.2d at 871.

"Common basic shapes" are not inherently distinctive, but "stylized shapes" may be inherently distinctive if "unique or unusual in the relevant market." Star Indus., 412 F.3d at 381. While marks with minimal stylization may be inherently distinctive, such marks are weak and entitled only to minimal protection. Star Indus., 412 F.3d at 383.

The Artisan Mark is a registered mark and, therefore, entitled to a presumption of distinctiveness. Moreover, it is a suggestive mark; the term requires imagination to reach a conclusion as to the nature of the goods. Accordingly, the Artisan Mark is entitled to protection.

Because the Fleur De Lis Mark includes minimal stylization beyond the common fleur de lis shape, it is inherently distictive. See Star Indus., 412 F.3d at 381 (minimally stylized version of the letter O with wide sides, colored in orange with gold lines was inherently distinctive). In addition, it is a fanciful or arbitrary mark. Accordingly, the Fleur De Lis Mark is valid and entitled to protection.

B. <u>Likelihood of Confusion</u>

In assessing likelihood of confusion, this Court considers the following eight factors: (1) strength of the senior user's mark; (2) degree of similarity between the marks; (3) competitive proximity of the product; (4) likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) defendant's bad faith; (7) the quality of defendant's product; and (8) sophistication of the relevant group. <u>Polaroid Corp. v. Polarad Elec. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961). These factors do not create a "rigid formula" and no one factor is determinative. <u>Lois Sportswear</u>, 799 F.2d at 872.

1. <u>Strength of the Mark</u>

A mark's strength can be shown by its inherent distinctiveness, by proof that the mark has secondary meaning, or both. <u>Paddington</u>, 966 F.2d at 585. Advertising expenditures can support a finding of strength, but alone are insufficient. See <u>Lexington Mgmt.</u>, 10 F. Supp. 2d at 280. Extensive third-party use of a similar mark can dilute the strength of the mark. <u>W.W.W. Pharm.</u>, 984 F.2d at 573. However, "the alleged infringer must demonstrate that the third-party marks were actually used by third-parties, that they [are] well promoted or that they [are] recognized by consumers." <u>Lexington Mgmt.</u>, 10 F. Supp. 2d at 281 (internal citations and quotations omitted). Moreover, "third-party use has less effect where the third-party marks are used to promote entirely unrelated products." <u>Scarves by Vera, Inc. v. Todo Imps. Ltd.</u>, 544 F.2d 1167, 1173 (2d Cir. 1976) (internal quotation marks and citations omitted).

As discussed above, the Artisan Mark is a suggestive, registered mark entitled to the utmost protection. Although AGM has shown that a third-party markets a sink as the "Franke Artisan Inset Sink," this does not constitute extensive third-party use. <u>See, e.g.</u>, <u>Nature's</u>

6

Best, Inc. v. Ultimate Nutrition, Inc., 323 F. Supp. 2d 429, 432-33 (E.D.N.Y. 2004) (registration of sixty-six similar marks for use with the same products constituted extensive third-party use). Accordingly this factor weighs in favor of finding a likelihood of confusion as to the Fleur De Lis Mark.

Although the Fleur De Lis Mark is inherently distinctive, there is only minimal stylization of the common fleur de lis shape. Artisan spent $400,000 over five years in advertising its products, but there is no evidence as to what portion of those expenses directly relate to the Fleur De Lis Mark. See, e.g., Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 371 (E.D.N.Y. 2007) (advertising statistics alone are insufficient to establish secondary meaning); Exquisite Form Indus., Inc. v. Exquisite Fabrics of London, 378 F. Supp. 403, 411 (S.D.N.Y. 1974) ("[A] mere showing of advertising does not provide a basis for determining the extent of customer awareness of a mark."). Artisan also has presented no evidence that the public identifies the Fleur De Lis Mark with Artisan's sink, other than its own statements that consumers have come to readily identify sinks sold under the trademarks. See, e.g., Jewish Sephardic Yellow Pages, 378 F. Supp. 2d at 345-46 ("[B]oilerplate affidavits offer only scant support for the proposition that plaintiff's mark had acquired the requisite level of recognition among the relevant audience."); 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 277 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (an affidavit from plaintiff is "far from compelling evidence that mark has secondary meaning"). Although AGM has provided evidence that other corporations have registered marks including a fleur de lis design, only one is in the same industry as Artisan, and that mark features a horse and shield design along with the fleur de lis. This is insufficient to show that the Fleur De Lis Mark is common in the relevant market place. See Lexington Mgmt., 10 F. Supp. 2d at 281-82 (the mere presence of third-party

7

registration is insufficient absent evidence that the mark is actually used, well-promoted, or recognized by consumers). Accordingly the strength of the mark factor does not weigh significantly one way or the other on the issue of likelihood of confusion as to the Fleur De Lis Mark.

2. Degree of Similarity of Marks

"To apply [the degree of similarity factor], courts must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005). Courts must consider "whether the similarity between the two marks is likely to cause confusion and what effect the similarity has upon prospective purchasers." Lexington Mgmt., 10 F. Supp. 2d at 283-84.

AGM's use of the Artisan Mark by telling customers they would receive an Artisan sink would cause confusion among prospective buyers. There are elements of the Crown Mark and the Fleur De Lis Mark that are similar: both feature swirled designs which emanate from the base of the shape to the sides. In addition, the Crown Mark is found in a similar part of the sink as the Fleur De Lis Mark. Given the similarities between the marks and their placement on the sink, the Crown Mark could cause confusion among prospective buyers. Accordingly, this factor weighs in favor of finding a likelihood of confusion as to both marks.

3. Competitive Proximity and Likelihood of Bridging the Gap

The factor addresses "whether due to the commercial proximity of the competitive products, consumers may be confused as to their source." Clinique Labs. Inc. v. Dep Corp., 945 F. Supp. 547, 553 (S.D.N.Y. 1996). Where the parties compete in the same

market, there is "no gap to bridge" and that factor tips in favor of a likelihood of confusion. Kookai, S.A. v. Shabo, 950 F. Supp. 605, 608 (S.D.N.Y. 1997). However, it is not necessary for the products to be in direct competition. Virgin Enter. Ltd. v. Nawab, 335 F.3d 141, 150 (2d Cir. 2003). The "concern with product proximity relates to the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves." Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 396 (2d Cir. 1995).

AGM and Artisan are not direct competitors because Artisan sells sinks, while AGM sells countertops with free sinks. Customers might be confused as to the source of the sink they receive from AGM. Accordingly, these factors weigh in favor of a finding of a likelihood of confusion as to both marks.

4. Actual Confusion

A plaintiff need not show actual confusion to prevail; however, the absence of proof of actual confusion favors defendants. Streetwise Maps, Inc. v. Vandam Inc., 159 F.3d 739, 745 (2d Cir. 1998). There is evidence that two customers believed they received an Artisan sink because an AGM salesperson told them they would receive one.[1] There is also evidence that at least two customers believed AGM's Crown Mark was the Artisan's Fleur De Lis Mark. Although this is insufficient to show actual confusion, see Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F. 3d 114, 124 (2d Cir. 2001) (two instances of confusion insufficient evidence to raise triable issues of fact on actual confusion), it does weigh slightly in favor of finding a likelihood of confusion. See Madison Ave. Caviarteria, Inc. v. Caviaria.Com, No. 04 Civ. 0493 (RO), 2004 WL 744481, at *2 (S.D.N.Y. Apr. 7, 2004) (confusion of one customer supported

---

[1] Seven additional customers believed they had received Artisan sinks from AGM; however, the evidence does not show whether those customers were confused because of the Crown Mark or because they were told they would receive Artisan sinks.

finding of likelihood of confusion); Fruit-Ices Corp. v. Coolbrands Int'l, Inc. 335 F.Supp.2d 412, 426 (S.D.N.Y. 2004) (confusion by two customers, an employee of a distributor, and a seller support finding of likelihood of confusion). Accordingly, this factor weighs in favor of finding a likelihood of confusion as to both marks.

### 5. Bad Faith

This factor concerns "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill, and any confusion between his and the senior user's product." Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991). The defendant's awareness of plaintiff's mark may give rise to an inference of bad faith, which is bolstered if the defendant offers no credible explanation for its adoption of the mark. See New York State Soc'y of Certified Public Accountants v. Eric Louis Assoc., Inc., 79 F. Supp. 2d 331, 348 (S.D.N.Y. 1999). But see Lang, 949 F.2d at 583-84 (prior knowledge of the plaintiff's trade name does not give rise to an inference of bad faith "because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith").

AGM has offered no explanation for telling customers they would receive an Artisan sink. Accordingly, this factor weighs in favor of finding a likelihood of confusion. Although AGM was aware of Artisan's Fleur De Lis Mark prior to its adoption of the Crown Mark, it has offered an explanation for its adoption of the mark: that it was inspired by the crown of King Boleslaw I of Poland. See P.F. Cosmetique, S.A. v. Minnetonka Inc., 605 F.Supp. 662, 670 (S.D.N.Y. 1985) (detailed history of defendant's trade dress negated any inference of bad faith). However, there is also evidence that AGM told customers, including Artisan's investigator, they would receive an Artisan sink, which suggests that AGM may have adopted

the Crown Mark in bad faith. Accordingly, this factor weighs slightly in favor of finding a likelihood of confusion.

### 6. Quality of Defendant's Product

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 398 (2d Cir. 1995). Based on the record, this Court cannot determine whether AGM's sinks are of inferior quality. Artisan claims that AGM is passing off inferior eighteen-gauge sinks as sixteen-gauge sinks, but there is evidence that Artisan also sells eighteen-gauge sinks, which suggests that Artisan's reputation would not be jeopardized by AGM's sale of eighteen-gauge sinks. Accordingly, this factor does not weigh in favor of or against finding a likelihood of confusion.

### 7. Sophistication of Purchasers

"The more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." Savin Corp. v. Savin Group, 391 F.3d 439, 461 (2d Cir. 2004). Artisan concedes that purchasers of countertops and sinks are sophisticated purchasers. Accordingly, this factor weighs against finding a likelihood of confusion.

Weighing all of these factors, this Court finds that AGM's use of the Crown Mark and the Artisan Mark creates a likelihood of confusion as to the source of its sinks. Accordingly, Artisan has satisfied the requirements for a preliminary injunction with regard to AGM's use of both marks.

III. False Advertising

Having granted Artisan's motion for preliminary injunction based on its trademark infringement claims, the Court declines to address Artisan's false advertising claim under Section 43(a) of the Lanham Act.

CONCLUSION

For the foregoing reasons, Artisan's motion for a preliminary injunction is granted. The parties are directed to submit a proposed order consistent with this Memorandum and Order by May 30, 2008. The Court will hold a status conference on June 23, 2008 at 2:00 p.m.

Dated:   May 19, 2008
         New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Louis Sherman Ederer, Esq.
John Maltbie, Esq.
Arnold & Porter, LLP
399 Park Avenue
New York, NY 10022
*Counsel for Plaintiff*

R. Glenn Schroeder, Esq.
Ludomir Budzyn, Esq.
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791
*Counsel for Defendant*

12